Good morning ladies and gentlemen. The first case this morning is Halperin v. Richards and Mr. Novot. Good morning, Your Honor. May it please the Court. My name is Gorton Novot. I represent the appellants Mr. Alan Halperin and Mr. Eugene Davis as co-trustees of the Atheon Liquidating Trust. This is an appeal from the opinion and judgment of Judge William Griesbach of the Eastern District of Wisconsin. Venue was transferred to that court from the U.S. Bankruptcy Court for the District of Delaware. This appeal concerns state fiduciary duty laws as well as state unlawful dividend laws and whether those laws are preempted by a riskless conflict preemption provision. Mr. Novot, let me just start you out if you would. Thank you. Is it the plaintiff's claim that the company went under because of violation of ERISA fiduciary duty? Absolutely. I have a lot more to go. I'm sorry. Violations of state law corporate duties or both. If the company was driven to bankruptcy, how could those claims not be preempted by ERISA? Thank you, Your Honor. If I may, I will address that. Your question, Your Honors, I understood it is what's the reason why the company went into bankruptcy and if the claim is that the company was forced into bankruptcy as a result of its ERISA obligations, how does ERISA not preempt that under 514A? Or violations of state law, corporate duties or both? That's right, Your Honor. So the reasons why Appian filed for bankruptcy could be one of many. You had a very sick company over the duration of its life. It started out as an ESOP in 2001. We know the history. Pardon? We know the history. Right. So the essence is that the company made corporate decisions and the essence of our claims is that the company made corporate decisions for the benefit of the ESOP participants and fiduciaries without respect and without being mindful of state corporate fiduciary duty obligations. And so to answer your question, Your Honor, whether they did or they did not, there's case law out there we've cited in our papers that says that, for example, the claim under both an ERISA claim, which an ERISA participant or beneficiary can bring under ERISA, but my clients cannot bring under ERISA, or a state fiduciary duty claim can both be facts for different plaintiffs. And that's the Sommers case of the Fifth Circuit that we cited in our papers. So, Your Honor, just to try to address the question more broadly, when one looks at ERISA, one really needs to look at what's the purpose of ERISA. What's the purpose of ERISA preemption? And it can fairly be said that the purpose of ERISA is to benefit ERISA plan participants and beneficiaries. But ERISA says nothing of the rights and protections that should be accorded to the corporate enterprise and to the residual claimants, which are the creditors. At all times during our, at all times during the events that are subject to the claims in our complaint, we've alleged that the company was insolvent and woefully insolvent. At pages A135 through A140 of the record, which cites two paragraphs, I believe it's 335 through 347 of our complaint, we've alleged both balance sheet insolvency as well as cash flow insolvency and the debt trading prices to reflect that insolvency. The reason why that's important here is we're dealing with a company where, in essence, and this is the question at hand, which is you have a very sick company, a very insolvent company, a company where under the ordinary rubric of the bankruptcy regime established in 1978, creditors come before equity. And this is an overall policy consideration, but I represent a litigation trust that was established for the benefit of the creditors. Our litigation trust does nothing for equity. Equity claimants have no rights and they enjoy no benefits of any claims that we bring. And that makes sense because the bankruptcy code is designed to pay back creditors first before you pay equity. So if one were to look at ERISA and look at ERISA preemption under 514A, the question really is ERISA was intended to focus, and it's language, I'll get into the two-pronged test and why the district court didn't satisfy that in a moment, but the reason why you have ERISA preemption is to, in essence, funnel planned participants, planned beneficiaries into a single enforcement regime. It says nothing, and ERISA, to Congress's intent, said nothing about protecting a victim corporation from the malfeasance of directors and officers and other bad actors. Now, before you get into the two prongs, did Rutledge change the way we are to analyze preemption? You know, you seem to argue that the approach in Rutledge is not novel. But did you raise this approach in the district court? Of course, the case had not, you know, been decided when you were in district court. So I'm speaking of the approach, okay? So to answer your question concerning Rutledge, in December of 2020, when Justice Sotomayor issued the opinion on behalf of the court, she was getting at sort of a groundwork. And the reason why we raised Rutledge here is the approach is to look at state law first. Now, it incorporates and goes back to the life case of 1987, which articulates the two prongs. But Justice Sotomayor, in the Rutledge opinion, was really focused on sort of what the roadmap is. And does the state law itself, looking solely at the law itself, require a connection with or reference to an ERISA plan? So in that way, Rutledge looks at it fresh. And we think it's helpful and informative to the court that the focus is really on the law itself and less so on the claims as applied. But we believe, Your Honor, frankly, if you look at the law itself, it's an easy answer. There's no preemption. But if you look at the claims as applied, there's no preemption as well. So if I may just address the two prongs of, you know, originally the Pilot Life case from 1987, which, you know, has been repeated in a number of Supreme Court opinions and other courts opinion, but it basically turns on the language of ERISA and how ERISA preemption focuses on what does it mean to be related to? And what does it mean for a state law to be related to an ERISA plan? And so the two prongs, in essence, are one, there's the connection with prong, and there's the reference to prong. And the district court, by the way, addressed neither of these prongs in its opinion, rather than just straight concluding that the state law claims were related to. But even if one were to look at the two prongs, there's no preemption that can be found. The first reason is Delaware corporate law does not require ERISA plans to be in any particular way. Delaware corporate law does not cause disuniformity in any plan administration. Delaware corporate law is a law of general applicability. But if I could interrupt. It seems to me here that your complaint is focused primarily on the question of valuation for purposes of stock redemptions, right? Well, Your Honor, that's one of the focuses of the complaint, but it's more broad than that, because those to all corporate decisions. Exactly. Those are the key. They are the key. They're the center of plan administration in this case. And it seems to me that trial would inevitably have to require not only reference to, but very close examination of the plan itself and that valuation process. So why? I mean, we have all these verbal formulas like related to connection with reference to I'm trying to look more practically at what a trial would involve here, right? So respectfully, Your Honor, I disagree. And I'm gonna tell you why I think that perhaps the emphasis is misplaced. The valuation, as I said, was key to all sorts of other corporate decisions that were made. So with respect to officer compensation, with respect to intercompany lending decisions that were made, the valuation here was severely, I would say, disconnected from the reality that we were dealing with an insolvent company. To answer your question specifically, though, if one were to look at the evidence, there is no plan provision that we would look at to a risk of plan provision, that is, that would be emphasized in any trial that was dealing with evaluation question. We're dealing with the straight question is, which is how do you value stock of a company? And if this were not an ESOP and we were as the Delaware corporate law deals with a law of general applicability, we'd be dealing with a company where officers all the time get stock bonus incentive. And same thing with directors. The directors here got phantom stock and compensation that was based on the value of that stock. Those decisions happen all the time. And valuations of companies happen all the time outside of the risk of context. And this goes to the points of general applicability. And I know Your Honor said what you said about there being no connection with. But the point is that Delaware corporate law would exist irrespective of whether there was any risk of plan or not. And as I said before, the Somers drug case from 1986, and it's cited in our papers, but it's 793 F second 1456, says that you can have both ERISA claims as well as state corporate law claims based on the same set of facts. And that was because the state corporate law there was a general applicability. So respectfully, I understand and respect the fact that one might look at this and say they were only performing evaluation because there was an ESOP. But compensation, corporate lending, all the core issues of fiduciary duties tie into the same issue. And respectfully, when one is wearing two hats, because directors and officers wore the hat of being corporate fiduciaries, and also wore the hat of being ERISA fiduciaries. If you were to take the appellee directors and officers at their argument, they would always be wearing the ESOP ERISA fiduciary hat, and they would never wear the corporate hat. And so what should what should they have done? This two hat conflict is has been recognized since the earliest days of ERISA. The inside ERISA fiduciaries owe two different sets of fiduciary duties, at least two. So what, in your view, should the inside fiduciaries have done in this situation? Well, they needed to find at least one person to act for the corporation. Here, as we've pledged, they were dealing with an insolvent corporation for years, and not a single corporate actor ever acted for the benefit of the residual creditors and the residual claimants who are the real equity and stakeholders here. The follow-up on your reliance on the Summers drug case for a moment. I have to say to both sides, I read the briefs with at least a little bit of amusement, which is rare in an ERISA case, as you were both telling us how easy the case is to decide, given this dearth of case law. Summers drugs is probably as close as anything as we're going to see at the appellate level. And as I understand it, in that case, all of the defendants who could be sued had both hats on. In essence, they were both the directors and officers. But you're also suing Stout and Argent here, who, as near as I can tell, don't owe any of its creditors. And they're performing core ERISA functions. And I'm concerned that if your claims against them are not preempted, you wind up loading fiduciary duties, extra sort of two-hat fiduciary duties, onto one-hat ERISA fiduciary duties. I don't know if that's clear, but it's a troubling prospect. Right. Well, if I could address that first, to be clear about the record here, Argent and Stout are being sued not in their capacity as an ERISA fiduciary, but they're being sued for any aiding and abetting they did to a duty that somebody else owed. So it's a corporate duty that the directors and officers owed, and they're being sued in account of their participation in aiding and abetting of the breach of that corporate duty. Well, does that beyond that Burbank Grease case that you cited? I don't think Wisconsin law is, quite frankly, relevant on that question, because we're dealing with, in essence, Delaware law. The case was filed in Delaware. It's a Delaware venue move. And since there was both the first jurisdiction as well as bankruptcy federal subject matter jurisdiction, it's the host court where the claim was filed. That law would apply. And in Delaware, you apply choice of law principles. And in Delaware, that means Delaware's internal affairs doctrine applied with respect to state law and not Wisconsin state law. I don't know if that answered your question or threw about 10 other issues at your honor that was not presently before the court. But for all intents and purposes, the claim that the law that applies here on preemption questions is of the Federal Circuit, which is the 7th Circuit. But state law questions could go back to Delaware with claims filed. Good. Well, but Summers doesn't involve those The Antioch case that you rely upon, if I recall correctly, said you can pursue the directors and officers on these state law theories, but not contractors, in essence, who were on this aiding and abetting theory. Right. The bankruptcy court, candidly, in Antioch, got it wrong because the own opinion is it's a recommendation, a referral to the district court. And the bankruptcy court basically said you require both an independent duty in order to have an aiding and abetting claim. And, you know, one knows in order to have an aiding and abetting claim, if you have a primary duty, then you will never have, in essence, a claim for an aiding and abetting claim because you have a primary breach obligation. So, candidly, Antioch, I think, got it wrong until it was clarified. And I see that my time has expired, your honor. I'm happy to answer any additional questions. If with the indulgence of my colleagues, I'd like to ask a couple more. This is a pretty complicated case with a fair amount of moving parties. And I guess to pursue this concern, Stout could not be sued for damages under ERISA, could it? Certainly not by my client. My answer, I'm able to opine on because, again, frankly, I don't represent somebody who... The Supreme Court has said there's no aiding and abetting damages liability under ERISA, okay? That was Mertens, I believe, in 1993. And your theory would, in essence, leave creditors able to pursue relief against Stout, and for that matter, Argent, when... Well, at least against Stout, when beneficiaries who would have been hurt by similar conduct would not be able to sue them for damages. That seems like an odd disconnect. Well, one has to consider that this is an insolvent corporation, and you're looking at rights of different parties, and that's the disconnect. I mean, the disconnect is in that Congress never intended to find a victim corporation who's been victimized by its directors and officers to the constraints of the ERISA enforcement regime. There's nothing in the legislative intent that suggests that creditors of a company that's hopelessly insolvent, like the one we were dealing with here, the corporation itself would be funneled into that ERISA enforcement regime. So is it your theory here that no state corporate law can ever be preempted under ERISA, or are you arguing for a narrower resolution of this case? I'm certainly arguing for a narrower resolution. I would say, Your Honors, as one attempts and looks at state corporate law here, we're talking about a Delaware breach of fiduciary duty, as well as Delaware unlawful dividend statutes. The unlawful dividend statute itself is something different, but neither of those laws are, you know, in any way requiring ERISA's plans to be structured in any way. There's no, you know, their general applicability, they don't cause disuniformity in plan administration, and, you know, there's no specific reference to. In fact, you know, those laws exist separate, apart from the existence. So to answer your question, Judge Hamilton, it's a narrow finding that we're looking for, because there certainly have been other case law where people have looked at, and the courts have looked at, and opined that you may have a court, a law itself, that's state law, not looking at corporate fiduciary duty and corporate unlawful dividend, but looking at other sorts of laws that could, in essence, be a parallel type of law to a representative. What I do say is that the claims of the laws that are here. Let's stop for a minute. You were completely unheard. We're losing your audio. Oh, I apologize. I will try to speak up. No, it wasn't speaking up. It was garbled. Okay. So the last point in answering Judge Hamilton's question was really, are there ever any other corporate or any other laws or state laws where there might be preemption? Or is it, or am I looking for a narrow finding? I'm looking for a narrow finding. You know, what Rutledge says is you have to focus on the law, and the law here that we're looking at, the state law, is Delaware corporate law, and the Delaware corporate statutes, which go to unlawful dividends. And so, you know, when you focus on the law itself, especially in the context that we're dealing with, which are claims that are being brought by a liquidating trustee on behalf of a, you know, what was it, insolvent debtor that went through the bankruptcy process. That's why we think that, you know, the court should tailor a ruling here such that it reverses the district court and remands for further proceeding. All right. Thank you, Mr. Martin. Yes. I may please the court. My name is Craig Martin. I am counsel for the directors and officers in the case. Your honors, the district court was correct in finding that the claims were preempted under ERISA section 514 because the I say that. Directors and officers seem certainly seem to be arguing that they were wearing their ERISA hats when making these decisions, not their corporate fiduciary. But there's a conflict of interest between what's best for the plan and what's best for the company. What should happen then if there is a conflict? Are you arguing that they can be protected from claims that they violated their duties to the company by asserting that they instead did what was best for the plan? Shouldn't they have been required to resign from one position or the other if there is a conflict of interest? Your honor, respectfully, I don't see the case as a conflict of interest case. I see the case as the following. The plaintiff's claims and each of their, I think it's six claims, all concern the director and officer's involvement in the ESOP's valuation process, the benefit distribution payment obligation process, intercompany lending transactions. And the law requires that ESOP fiduciary obviously act in the plan's interest. Those, the issues that are parsed out factually in each of the accounts of the complaint are issues that are, how should I say it, key to and central to the administration of the ERISA plan. And each of those issues with regard to valuation, benefit distributions, intercompany lending transactions, that are the factual predicate of the claims that the plaintiff brings, requires, are preempted because they are grounded in the duties of ERISA, the ESOP. They also require an examination of the plan documents and acting in accordance with the plan obligations. And the ESOP investigation, the ESOP case, the ESOP case, the ESOP case that was reached in the complaint, they all deal with the over-valuation and financial projections with regard to the ESOP and without making it too complicated because as we all know ERISA cases are simple. That's a joke, sorry. Without making it too complicated. ERISA humor is just very dry. Without making it too simple. Look, all of the claims, count 1, 2, 3, 4, 5, 6, 7, 8, they all arise out of the fundamental valuation and financial productions done for the ESOP. So that is the core aspect of the claim. And that is clearly related to and preempted by the ERISA. So Mr. Martin, you also tell us this is an easy case. But I didn't see where you had really engaged with the Summers drug case or the other cases plaintiff sites, plaintiff's site in which bankruptcy and district courts around the country have also held that similar claims are not preempted. And I wonder if you can direct us to, if you can talk about those cases and direct us to any cases in which non-ERISA actors were asserting rights under state corporation law and were held to be preempted by ERISA. Because I have the very same question. I want to add something if I might. Why is it not possible to have parallel but independent duties and parallel and independent liability for breaches of those duties? How would that harm ERISA's goals here? In other words, if the defendant's actions harm both the company and the plan, why cannot both the company and the plan recover? So a lot of questions, or more than one question there, but let me see if I can explain to you the way. No, that's perfectly fine, Your Honor. With respect to the way I think about this and the reason I say the case is easy, I have to be very clear about that. The reason I say that is because of the way the factual allegations are pled in the case. The case itself tethers the claims to the very fundamental ESOP duties with respect to valuations and financial projections and the other issues. There are, and Judge Rovner, you began with these questions of opposing counsel. There are theoretical types of issues that could be this is not that case. This case is simply the duties or the allegations with regard to what the defendant, director, and officers did wrong is exactly the duties that they are supposed to do with respect to the plan in terms of valuation and financial projection. Judge Hamilton, with regard to just to tether back to the question that you were asking, engaging with the Summers case, I think the Summers case essentially says, essentially stands for the proposition that the court found that the state law corporate fiduciary breach claim did not tether itself to the ERISA plan at issue. The court, I think, in reading the language of that case, which is a little bit unclear to me, but in reading the language of that case, the court seems to say that the ERISA plan, although it's not clear from the case itself, is not tethered to an ERISA plan. So it does not relate to an ERISA plan the way this case relates to an ERISA plan. Judge Rovner, just to give you my intellectual construct, if I were thinking about this, there may be duties that a director and officer owes that are independent in an ESOP corporation that are completely independent of the duties that a director and officer may owe in an ESOP plan of corporation. In an ESOP plan, for example, if you have to value the plan that is typically or the stock that is typically spelled out in great particularity in the employee benefit plan documents or the ESOP. To use a hypothetical to just illustrate the point, a director might be sued for mismanagement in a different regard. For example, a director could be sued for failing to ensure that there was an adequate compliance program with regard to the Foreign Corrupt Practices Act. A director could be sued with regard to failing to ensure that there was a program in place with regard to anti-discrimination laws. Those are different types of duties and they're not impacted here. The core duty impact here out of which the entire complaint arises is the very fundamental duties that relate to the ESOP plan. If I could follow up on that point, though, to what extent does your argument depend upon 100 percent of the stock being owned by the ESOP plan? Suppose you've got 10 percent of the stock held by other minority shareholders. Are they without recourse to bad decisions about valuation and other decisions enabled by them? I think, Judge Hamilton, I think you're asking for the intellectual construct aspects of that as opposed to this particular case. I'm asking how far your reasoning extends. Right. Yeah. I think my reasoning... No, thank you for that. My reasoning is very... extends to the case at hand before you and that is these particular factors. So if one share of stock is held by someone else, then that person would be able to sue directors and officers under corporate law for those actions? I don't know that I would agree with that, Your Honor. To be honest, I have not thought about that. Well, suppose only 10 percent is held by an employee stock ownership plan, which is not the retirement savings benefits. Again, I have not thought about the sliding scale with regard to where you may draw the line. Our position only goes to where you would draw the line in a case like this one. Don't you think that that should be paramount, where we should draw the line? I mean, you know, this is a first impression for the Seventh Circuit. We need to think about not only history, but future. Yet, Your Honor, with respect to this particular case, I think it is very clear where the line should be drawn because this particular case is an Aesop case that does not present the line-drawing hypothetical or a sliding scale of an Aesop that is partially owned in other circumstances. And the way the allegations are pled in this case, it doesn't involve that at all. So I think in terms of the development of the law with respect to ERISA, the appropriate outcome is to rule that this particular complaint with this particular Aesop plan is preempted. Mr. Back to my question about case law. Yeah. That was not addressed in your brief. I saw one footnote about Summers Drugs, no mention of the other cases, and I really didn't see any site to any case that goes your way on facts at all close to this. I don't think that there is. I think that this is an application. The short answer to your question, Judge Hamilton, is I do not think there's a controlling case in the Seventh of this case. That's clear. But even guidance from around the country. I don't think that there is. We've scoured the law, including the Summers case and other cases. We have not found a case that really addresses the issues that Judge Rovner and you are talking about with respect to, suppose you have an ERISA, an Aesop that is partially owned by the employees and also not Aesop participants, if you will, that's partially owned. With regard to the reason I come back to the straightforward application of the law is because the ERISA preemption statute, under any of the formulations by the Supreme Court, is very clear. I think that you look at the key and center of the complaint and the key and center of the complaint with regard to this complaint, everything arises out of the Aesop obligations. So it's a one plus two equals three, if I could say it that way, as opposed to here's the case that tells you what you should do or any case that really addresses the questions Judge Rovner was asking. For you, Judge Hamilton. Thank you. Thank you for this gift to us, all of you. Thank you, Mr. Martin. Yes, good morning, Your Honors. Mike Shire on behalf of Argent Trust Company. And I think we finally got into the easy aspect of the case. You've been joking about that, but I think we've really finally reached kind of the easy part of the court's decision. And let me start with a couple of core concepts that I haven't heard discussed yet. And the first is, and the appellants don't dispute this, the Supreme Court's given us a construct on how to analyze the particular preemption issues under 514A with regard to my client, Argent Trust Company. One is 514A preempts state laws, including state common law, that govern central matters of plan administration or that interfere with nationally uniform rules regarding plan administration. And secondly, the Supreme Court has given us very specific and typical terms that 514A conflict preemption also obviously preempts any state laws, including common law, that conflicts with ERISA or that supplements or supplants ERISA. So with those core concepts in mind, let's look at why Judge Griesbach got it right, at least with regard to my client, Argent Trust Company. And this isn't a case where it's all or nothing. Argent is in a very unique position, and you'll see why in a moment. And the analysis with regard to Argent is much different than with regard to the other defendants that the plaintiff named in this case. First things first, there's no question that the state law at issue here is one that is subject to preemption. That's common law aiding and abetting claim, either under Delaware or Wisconsin state law. Perhaps more importantly is the plaintiff's claim, as against Argent, arises solely and only out of one aspect of Argent's fiduciary conduct. That is valuing the shares of PDC, the parent company, twice a year. That is a central matter of plan administration, and there's no question about that. Why? Because that valuation was used to pay benefits to ESOP participants departing from the plan. So there's little question that the work was central to plan administration, nor is there any question that Argent is unquestionably the only defendant that is wearing one hat in the parlance that we've been speaking in this morning, and that is as an ERISA fiduciary. It had no other role. Let me stop you for a minute. Yes. I'm going to ask you a question that may seem simplistic, but you know, help us here. Why does it matter whether Argent owed a duty to the company when it's charged with aiding and abetting the officers and directors? The only duty that I would think would matter in an aiding and abetting case is the duty owed by the directors and officers. So if the directors and officers had a duty to the company and Argent aided their breach of that duty, why isn't that sufficient for Argent's liability? Well, I think for the same reasons that you see a lot of common law claims preempted throughout the case law. The attributes or factors of the state law cause of action don't really come into play in the preemption analysis. As I mentioned, the construct is very definitive. Does the state law cause of action interfere or attempt to govern central matters of plan administration? Or does it interfere with national uniform rules of plan administration or otherwise conflict with ERISA? Regardless of where Argent, I'm not even sure it really matters much where duties lie and the whole two hat one hat issue is here. The question becomes in applying aiding common law aiding and abetting claims to Argent in this case. Does it interfere with uniform application of laws to employee benefit plans? And does it impact a central matter of plan administration? Those are the key questions in the preemption analysis, not to whom Argent owed a duty. That might be a case as discussed in Antioch and as discussed in Summers where you have officers and directors that are wearing two hats. Can they be sued by shareholders non-ESOP shareholders under their state law fiduciary duties of care and loyalty? And also can they be sued with their ERISA hats on by an ERISA fiduciary participant or beneficiary? That's where the duty question arises. Where Argent's duties went is really not an area of preemption other than to tell you to reverse below as to Argent will completely eviscerate uniformity of laws governing plans because Section 404 of ERISA specifically states that Argent must act with a singular eye towards the interests of the plan, the participants, and the beneficiaries. To expose Argent to concern about the interests of a corporation, its creditors, its shareholders, its other constituencies completely eviscerates that particular aspect and a key aspect of the Supreme Court test of when preemption applies to a particular state law. Do you think we should focus on Delaware tort law or Wisconsin tort law? I understand you think either would be preempted, but which do you think should be our focus? I would say Wisconsin state law, your honor. The ESOP was located in Wisconsin. Argent operated as the fiduciary in Wisconsin. Obviously, the claims were transferred to Wisconsin with good reason. The beneficiaries, the participants of the plan are in Wisconsin, so I would say that Wisconsin law likely applies, although as you allude to, Judge Hamilton, I don't think it matters whether it's Delaware law, Wisconsin law, New York law, Ohio law, or Illinois law. It's all preempted based on those core concepts that I laid out. Keep in mind, your honor, Judge Hamilton, you had asked, I think, early on, Mr. Novin, what a trial would look like in this case, and I only circled back to that because you see several references in Supreme Court and Seventh Circuit cases to the idea that when a judge or a jury determining liabilities in a particular case needs to refer to the plan, to an employee benefit plan, that is an important factor to consider in the preemption analysis. And in this case, you have to determine Argent's duties and Argent's responsibilities by any means other than looking at the employee benefit plan, in this case, which is the employee stock ownership plan. So that was, to my mind, was an important question to have answered, and I didn't think it was. And so you would, the trier effect in this case would absolutely have to refer, and refer and frankly, to ERISA. Thank you, Mr. Chair. Your time has expired. Mr. Golombek? Good morning, your honors. Lars Golombek on behalf of Stout Rhesus Ross. I guess a benefit or a burden of sitting and listening to the other argument is that I feel like I need to respond to some of the issues that have come up and scrap my script. With respect to several questions about duties, Stout had no duty other than to Argent. They had no duty to the company or its creditors. I know there was a question by you, Judge Rovner, about, well, isn't it sufficient if there's a corporate duty and an AD and a betting is sort of a tag along to that? Well, I think then you're going to bootstrap a whole other regulatory regime onto ERISA. ERISA recognizes that there's going to be times when state law claims are permissible, when there's an established duty in the first instance. So, for example, there are times when a plan or plan fiduciary, like Argent, can bring a claim against a service provider to the plan, but there's a separate source, a separate duty for that state law claim under a contract, a services agreement, just like we had here between Stout and Argent. There is no such separate source or duty between Stout and the creditors to the company. And certainly, Appellant doesn't cite to that any separate source because there is none. And so, while ERISA recognizes this regime and recognizes claims that can be brought under ERISA or state law, bootstrapping and aiding a betting claim would completely upend that regime as it was contemplated by Congress. Let's talk about evidence for a second. Just to piggyback off of Mr. Shire's comment before, the sole framework for this claim is that Stout, in its role as the valuation for Argent as ESOP trustee, put its thumb on the scale. Each of the valuations is prepared for $50,000 a pop in order to perpetrate a conspiracy against the company. That is the sole framework for this case. If this case were to go to a trial, it would be about Stout's preparation of the valuation to Argent as prescribed under the terms of the plan document and under ERISA. And we litigate lots of ESOP cases, and that's exactly the kind of evidentiary questions that a court will face. But now it won't be under ERISA. It's going to be under state law, a complete conflict. We talked about, there was questions about, can we narrow? Is the type of claims here sufficiently narrow? All I've been focusing on is an aiding and abetting claim. That is not a sort of a common law claim, not of any specific nature. So anytime there's a question about ESOP and corporate creditors, now someone can bring, if the decision is reversed, now someone can bring an aiding and abetting claim and completely do an end run around ERISA. MR. GOLDBECK, is it your position that Stout is not subject to any ERISA duties? I'm not saying that. I'm not saying that at all. Good. I didn't think so. I was hoping that. No, no. Under ERISA, Section 502A3 of ERISA specifically authorizes a beneficiary or participant of fiduciary to bring a claim for equitable relief under the statute against a non-fiduciary like Stout. And in fact, in the analogous action involving Appian, the planned committee representative has brought that type of claim against Stout. So the question is whether they pleaded a viable claim, but the claim itself is a cognizable claim against a non-fiduciary under ERISA. Okay. Thank you. With respect to Rutledge, I respectfully disagree with Appellant's counsel. I do not think this is preemption analysis in a different way under a unique set of facts. And those set of facts include the fact that there was a law, a regulation directed at pharmacy benefit managers and their negotiation of drug prices with retail pharmacies. PBMs also negotiate with plans over drugs. That was not the applicability of that statute. It only related to the contracts with retail pharmacies. So I think the Supreme Court said there that the impact on the plan was incidental. That's not the case here as the claim has been alleged. It is the very heart of the claim. Happy to answer any further questions. Thank you for your time. Thank you, Mr. Blumberg. Mr. Norvit, I'll give you a little more time. You have two additional minutes. Yes. Thank you, Your Honor. And I just wanted to address a few points. One, Judge Hamilton, you raised the Summers case a number of times, and you asked the question of Mr. Martin concerning majority-minority stockholders. That's precisely the fact pattern there. You have the Fifth Circuit case that addressed it. That was a minority stockholder who had an issue with the way in which the corporation was doing things. And as I understand it, it was an employee profit-sharing trust, who was the minority shareholder, who sued the company and its largest shareholder, asserting that the largest shareholder, who wore numerous different hats, was violating not just ERISA fiduciary duties, but also state law corporate fiduciary duties. The second point I wanted to address concerns, in essence, the argument. And again, Judge Hamilton, you asked the question about what state law would apply. Respectfully, the circuit has rules. I respect those rules. The rules don't allow me to cite something that wasn't in our papers. There is a Supreme Court case that addresses this from 1964. If Your Honor wishes, I can give you the citation to it, but I don't. Yeah, sure. Citation is Van Dusen v. Baroque, 376 U.S. 612. And that basically says— That's back to 2L conflict of laws case. Of course, but that's a transfer venue case. And when you transfer venue, you're simply changing the courtroom, and it still applies the same principle laws that are applied. And as I said before my introduction, this case was originally filed under bankruptcy subject matter jurisdiction in the Bankruptcy Court for the District of Delaware, and thus Delaware law applies. Secondly, with respect to that specific question, Appian Inc., that company, and that's the company that almost all of our claims are centered around, is a Delaware corporation. It's not a Wisconsin corporation. The only Wisconsin corporation here is the parent company that is PWC, Paperweight Development Corporation, that had no assets, and frankly was just a holding company. All meaningful decisions were made at the Delaware corporate level because that's the Delaware corporation, and that's frankly why the company filed for bankruptcy in Delaware. The additional point I would make, Your Honors, is that there have been a number of questions, in particular, about how do we think about this case, and in particular on the aiding and abetting claims, about opening up the world to all sorts of different claims with respect to aiding and abetting. One, it comes back to the fact that this is an insolvent corporation. We're talking about duties that were owed by corporate directors to the corporation itself, not ERISA duties. Let it not be confused. We are not in any way asserting ERISA rights under ERISA. The litigation trustees under a bankruptcy plan set up under the bankruptcy regime are not ERISA-planned fiduciaries, beneficiaries, or participants. Everything that we're doing here is to further the interests of the insolvent corporation, which was the victim itself, as well as the creditors. To the point that Mr. Golenbach made concerning fiduciary duties, and he referenced Rutledge, I would just suggest that the way that Rutledge was as a case and as a matter of case law, the fact pattern there was you had, in essence, a new law that said that even though an ERISA plan mandated a certain amount of reimbursement to the, in essence, when somebody was buying wholesale drugs, or prescription drugs, I should say, that the state law would say, you can't force somebody to sell or buy those drugs at a loss. And the Supreme Court there looked at the law and said, it's a law of general applicability. And I went through these points before, and I won't repeat them, but it wouldn't in any way grant or create disuniformity between ERISA and the state law itself. Finally, and this goes to a point that Mr. Shire said, he attempted to cast his client's claims as being the one party that has responsibilities under ERISA and solely under ERISA, and that may be. But the point there is that whether there's disuniformity or not that's created, it really isn't on these claims and on this fact pattern. As much as all the defendants who are the appellees here would like to say, these claims themselves go to and are central to corporate decision making that was made. And as we said before, other circuits have found that there may be laws and there may be claims that may be brought on the same set of facts, and there are parallel duties. And in these cases, at least, and Judge Hamilton addressed this, and none of the defendants appellees in their papers responded, but there are a number of cases both in district courts, circuit courts, as well as the bankruptcy courts that have looked at these situations and have said that there is an importance to, one, protecting the corporation and allowing in cases where, as Judge Roedner suggested, that there can be parallel duties, and there can be parallel duties that run at the same time, and it certainly wouldn't infringe on and in no way would be something which would, I see that my time has expired. May I just sum up briefly, Judge Kane? No, I think you've finished it. You've gone through it quite a bit. Thank you very much. Thanks to all counsel. The case will be taken under advisement.